UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
MARK GARNES,

                  Plaintiff,

   -against-

THE HARTFORD INSURANCE
COMPANY,

                  Defendant.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
22-CV-3406 (RPK) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

    Plaintiff Mark Garnes initiated this action against Defendant "The Hartford Insurance Company" on June 6, 2022, alleging claims, *inter alia*, for breach of contract and breach of the covenant of good faith and fair dealing. (*See* Complaint ("Compl."), ECF No. 1.) Defendant[1] moved to dismiss on November 11, 2022, and, after the motion was fully briefed and Plaintiff filed a sur-reply, Defendant moved to strike the sur-reply on December 8, 2022. (*See* Mot. to Dismiss, ECF No. 16; Mem. in Supp. of Mot. to Dismiss ("Supp. Mem."), ECF No. 16-1; Mot. to Strike, ECF No. 20.) The Honorable Rachel P. Kovner referred both motions to the undersigned magistrate judge for a report and recommendation. (*See* Apr. 17, 2023 ECF Referral Order.) For the following reasons, the Court respectfully recommends granting Plaintiff leave to amend the complaint and denying Defendant's motions as moot.

---

[1] Defendant Hartford Underwriters Insurance Company ("HUIC"), "erroneously sued herein as The Hartford Insurance Company," filed the present motions. (*See* Mem. in Supp. of Mot. to Dismiss ("Supp. Mem."), ECF No. 16-1, at 1.) For simplicity, the Court refers to HUIC as Defendant, notwithstanding HUIC's argument that Plaintiff's failure to name HUIC as the proper party defendant renders his claims subject to dismissal for failure to state a claim to relief. (*See id.* at 5–6.)

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Factual Background[2]

This case stems from a motor vehicle insurance policy Defendant issued to Plaintiff on November 5, 2013. (*See* Compl., ECF No. 1, ¶ 6; *see also* Policy, ECF No. 16-3.) On July 1, 2014, during the policy period, Plaintiff was involved in a motor vehicle accident in Brooklyn, New York. (*See* Compl., ECF No. 1, ¶¶ 7–8.) Law enforcement responded to the scene of the accident and eventually contacted Metropolitan Auto Body and Towing ("Metropolitan"), to remove Plaintiff's vehicle from the scene. (*Id.* ¶ 7.) Plaintiff preferred to have his vehicle, a Volkswagen Passat, taken to a Volkswagen service center, but a truck driver from Metropolitan arrived and, against Plaintiff's wishes, towed the vehicle to "Metropolitan's tow yard for accident vehicles." (*Id.* ¶ 8; *see id.* ¶ 6.)

Plaintiff notified Defendant of the accident later that morning, and a representative for Defendant issued Plaintiff a claim number. (*Id.* ¶ 9.) As Plaintiff alleges, he "continuously sought the assistance of Defendant . . . to have [his] vehicle moved" from Metropolitan to the Volkswagen service center. (*Id.* ¶ 13.) "Defendant constantly assert[ed]," however, that it could not "do anything about it." (*Id.*) "However, it was Plaintiff's understanding that Defendant would notify Plaintiff" when Defendant had dispatched a representative to the tow yard, "thus, allowing Plaintiff to have that representative . . . assist Plaintiff" in having his vehicle taken to the service center. (*Id.* ¶ 15.)

---

[2] "On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).

2

Defendant sent an appraiser to Metropolitan's tow yard on July 22, 2014, but did not notify Plaintiff until the appraisal was completed. (*Id.* ¶ 16.) A couple of days later, Defendant issued a check to Metropolitan in the amount of $10,969.70 to make repairs. (*Id.* ¶ 20.) Despite some indication in the appraiser's report of possible internal damage, Defendant paid Metropolitan "the costs [of repairing] exterior structural damage only." (*Id.* ¶¶ 18, 20.) Plaintiff further alleges that Defendant issued the check to Metropolitan despite having previously advised Plaintiff that it would pay him directly. (*Id.* ¶ 21.)

Metropolitan completed its repairs on August 29, 2014. (*Id.* ¶ 24.) Upon receipt of his vehicle, Plaintiff drove it to the Volkswagen service center for an inspection. (*Id.* ¶ 26.) Days later, a representative from the service center contacted Plaintiff and informed him that Metropolitan had made "faulty repairs" to the vehicle, that Plaintiff "would need to pay the cost to disassemble the vehicle to determine further inner damage," and that it was unclear whether the vehicle was drivable. (*Id.* ¶ 28; *see id.* ¶ 30.) Plaintiff notified Defendant and later provided documentation of the faulty repairs. (*Id.* ¶ 29.)

Over the following months, Plaintiff noticed several issues with his vehicle while continuing to drive it. The horn did not work, the wheels were not aligned, and, one day, he had issues driving the vehicle in reverse. (*Id.* ¶¶ 31–33.) Plaintiff returned the vehicle to the service center for repairs, and, on December 2, 2014, Plaintiff was advised not to drive it anymore. (*Id.* ¶¶ 32–33.) Plaintiff contacted Defendant regarding the issues, but Defendant "refused to cover the costs." (*Id.* ¶ 33.)

During this time, Plaintiff filed a complaint against Metropolitan with the State of New York. (*Id.* ¶ 35.) Pursuant to his complaint, Plaintiff had the vehicle towed to the New York City Department of Motor Vehicles ("DMV") on April 15, 2015, for an inspection by a DMV investigator. (*Id.* ¶ 36.) The investigator concluded that

Metropolitan had willfully made faulty repairs to Plaintiff's vehicle, in violation of New York law. (*Id.* ¶ 37.)

Following the DMV investigation, Defendant issued Plaintiff a new claim number on April 27, 2015. (*Id.* ¶ 38.) Plaintiff's vehicle was returned to the Volkswagen service center, where it was determined that the vehicle would need to be disassembled to evaluate internal damage. (*Id.* ¶¶ 37–38.) Defendant declined, at that time, to pay the costs of disassembly, but retained a second appraiser who, on June 3, 2015, conducted a supplemental estimate of needed repairs. (*Id.* ¶¶ 38–39.) The appraiser informed Plaintiff, however, that he was unable "to conduct a thorough estimate of the internal[] damages" without having the vehicle disassembled, the cost of which Defendant again declined to cover. (*Id.* ¶¶ 39–40.)

Plaintiff spoke with one of Defendant's representatives[3] regarding the issue "and emailed her on this matter practically weekly for over two months." (*Id.* ¶ 40.) Eventually, on August 26, 2015, upon learning that he would soon incur a $50 per day storage fee, Plaintiff notified the service center that he would cover the costs of disassembly himself. (*Id.* ¶ 42.) On September 20, 2015, Plaintiff received a check from Defendant in the amount of $546.28 for "supplemental damages." (*Id.* ¶ 43.) Plaintiff alleges that Defendant thereafter unlawfully "cancelled Plaintiff's vehicle insurance" without notice on November 15, 2015. (*Id.* ¶ 45.) Plaintiff "attempted to have Defendant . . . reinstate [his] auto insurance coverage," but Defendant declined.[4] (*Id.* ¶ 52.)

---

[3] Although not reflected in the case caption, the Court notes that Plaintiff also appears to refer to this representative as a party defendant. (*See* Compl., ECF No. 1, ¶ 40.)

[4] Defendant does not indicate whether it terminated Plaintiff's insurance policy November 15, 2015, or whether the policy was terminated *at all*. (*See* Supp. Mem., ECF No. 16-1,

4

On or about February 29, 2016, Plaintiff removed his vehicle from the Volkswagen service center (having been charged $1,088.00) and stored it near a relative's home. (*Id.* ¶ 47.) Plaintiff returned his vehicle to Metropolitan for additional repairs in May 2016, which then returned it to Plaintiff in August 2016. (*Id.* ¶¶ 49–50.) The vehicle failed inspection on September 7, 2016, and Plaintiff traded in the vehicle on or about February 7, 2017. (*Id.* ¶ 51.)

## II. Procedural History

Plaintiff filed this action on June 6, 2022, requesting leave to proceed in forma pauperis. (*See* Compl., ECF No. 1; Mot. for Leave, ECF No. 2.) As set forth in the complaint, Plaintiff alleged claims against Defendant for breach of contract and breach of the implied covenant of good faith and fair dealing, along with various other violations of the New York Insurance Law and related regulations, seeking over $500,000 in damages. (*See* Compl., ECF No. 1, ¶¶ 60–79, 85.) By memorandum and order issued on August 19, 2022, Judge Kovner granted Plaintiff leave to proceed in forma pauperis but dismissed his statutory and regulatory claims under 28 U.S.C. § 1915(e)(2)(B). (*See* Mem. and Order, ECF No. 4, at 1, 7.) She further concluded that "[t]he breach-of-contract and breach-of-covenant claims may proceed." (*Id.* at 7.)

Defendant was served by the U.S. Marshals Service on September 19, 2022, via certified mail. (Process Receipt, ECF No. 7.) Specifically, the summons and complaint were sent to "The Hartford Insurance Company" at 1 Hartford Plaza, Hartford, Connecticut 06155. (*Id.*) A few weeks later, counsel for Hartford Underwriters Insurance

---

at 1–2; *see also* Pre-Mot. Conf. Letter, ECF No. 10, at 1–2.) Further, Defendant asserts that the second appraisal occurred on January 12, 2016 — not June 3, 2015, as Plaintiff alleges — and that Defendant informed Plaintiff on January 27, 2016, that it would pay for supplemental damages and "the tear down." (Supp. Mem., ECF No. 16-1, at 2; *see* Pre-Mot. Conf. Letter, ECF No. 10, at 2.)

5

Company ("HUIC") entered an appearance, and HUIC filed a pre-motion conference request regarding an anticipated motion to dismiss, on October 31, 2022. (*See* Notice of Appearance, ECF No. 8; Pre-Mot. Conf. Letter, ECF No. 10.) Among several arguments, HUIC indicated that the defendant named in the complaint, The Hartford Insurance Company, "does not exist" and that it was "merely a trade name." (Pre-Mot. Conf. Letter, ECF No. 10, at 2.) HUIC stated, however, that "[i]t is undisputed that [HUIC] issued the . . . relevant policy to Plaintiff," and further asserted several bases for dismissal of Plaintiff's remaining claims. (*Id.* at 2; *see id.* at 2–3.)

Judge Kovner denied Defendant's request on November 1, 2022, indicating that a pre-motion conference was not required in cases involving a self-represented party. (Nov. 1, 2022 ECF Order (citing Individual Rule of Practice IV.A.1).) Defendant subsequently requested a brief extension of time to file its anticipated motion, which Judge Kovner promptly granted on November 2, 2022. (*See* Mot. for Extension, ECF No. 12; Nov. 2, 2022 ECF Order.) In the meantime, Plaintiff filed a "request to correct misnomer" on November 7, 2022, whereby Plaintiff requested leave to amend his complaint to reflect HUIC as the party defendant. (Req. to Correct Misnomer, ECF No. 14.) Plaintiff also filed a response to Defendant's pre-motion conference letter. (*See* Opp'n to Pre-Mot. Conf. Letter, ECF No. 15.)

Defendant filed its anticipated motion to dismiss on November 11, 2022, appending a copy of an insurance policy matching the policy number provided in the complaint. (*See* Mot. to Dismiss, ECF No. 16. *Compare* Policy, ECF No. 16-3, *with* Compl., ECF No. 1, ¶ 6.) Plaintiff filed a response on November 28, 2022, and Defendant filed a reply on November 30, 2022. (*See* Opp'n Mem., ECF No. 18; Reply Mem., ECF No. 19.) On December 8, 2022, Defendant moved to strike a sur-reply that Plaintiff had emailed earlier that day. (*See* Mot. to Strike, ECF No. 20; *see also* Ex. 1 to Mot. to Strike, ECF

6

No. 20-1.) Plaintiff's sur-reply was docketed after Defendant filed its motion to strike. (*See* Pl.'s Sur-Reply, ECF No. 21.) On April 17, 2023, Judge Kovner referred both motions to the undersigned magistrate judge for a report and recommendation. (Apr. 17, 2023 ECF Referral Order.)

## DISCUSSION

Defendant raises several arguments in support of its motion to dismiss: (1) Plaintiff's claims necessarily fail because he does not name HUIC as the proper party defendant; (2) Plaintiff's claims are time-barred because, according to Defendant, "the six-year statute of limitations . . . expired *no later than* January 27, 2022"; (3) Plaintiff's breach of covenant claim is duplicative of the breach of contract claim; and (4) Plaintiff fails to state a claim entitling him to punitive damages. (*See* Supp. Mem., ECF No. 16-1, at 2; *see also id.* at 5–10; *id.* at 10 (arguing also that Plaintiff is not entitled to attorney's fees).) The Court agrees with Defendant's punitive damages argument, concluding also that the complaint fails to set forth allegations sufficient to establish an entitlement to damages for emotional distress or pain and suffering under New York law. *See, e.g., Bracken v. MH Pillars Inc.*, 290 F. Supp. 3d 258, 268 (S.D.N.Y. 2017); *Int'l Christian Broad., Inc. v. Koper*, No. 12-CV-3570 (LDW) (GRB), 2012 WL 5210595, at *3–4 (E.D.N.Y. Oct. 19, 2012); *Z-Axis Tech Sols., Inc. v. Richmond Cap. Grp., LLC*, No. 17-CV-3938 (GBD), 2018 WL 1088008, at *3–4 (S.D.N.Y. Feb. 14, 2018); *Law Offs. of Louis Venezia v. Swarth*, 164 F.3d 618 (2d Cir. 1998).

Because Plaintiff's remaining claims for damages do not appear to meet the $75,000 amount in controversy requirement for diversity jurisdiction, it is unclear whether the Court has subject matter jurisdiction. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not

7

presented."). Accordingly, as explained below, the Court recommends granting Plaintiff leave to amend, to grant him the opportunity to set forth good faith allegations showing whether the amount in controversy is met here. In light of the recommendation that Plaintiff be permitted to amend, the Court recommends denying Defendant's motions as moot.

## I. Legal Principles

"[F]ederal courts are courts of limited jurisdiction" and are generally authorized only to hear cases arising under federal question or diversity jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978); *see* 28 U.S.C. §§ 1331, 1332. "A plaintiff properly invokes [diversity] jurisdiction when he presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000." *Smith v. Parsons*, No. 09-CV-2921 (BMC), 2009 WL 3052631, at *1 (E.D.N.Y. Sept. 22, 2009). "A party invoking [diversity jurisdiction] has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Scherer v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quotation marks omitted). There is a "rebuttable presumption," however, "that the face of the complaint is a good faith representation of the actual amount in controversy." *Id.* (quotation marks omitted).

That said, "if a court makes a face-of-the-complaint determination that the $75,000 amount in controversy cannot be recovered to a legal certainty, the case is dismissed for lack of subject matter jurisdiction." *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 507 n.5 (2d Cir. 2005) (quotation marks omitted); *see Capeci v. Seven Corners Inc.*, No. 22-CV-6644 (RPK) (PK), 2022 WL 17253527, at *1 (E.D.N.Y. Nov. 28, 2022) ("If it is apparent to a legal certainty that a party invoking diversity jurisdiction cannot recover

more than $75,000, the lawsuit should be dismissed."). If the alleged amount in controversy is premised on damages that are unavailable as a matter of law, then those damages "may not be used to meet the diversity jurisdiction threshold." *Bracken*, 290 F. Supp. 3d at 268; *see, e.g., id.*; *Koper*, 2012 WL 5210595, at *3–4; *Z-Axis Tech Sols.*, 2018 WL 1088008, at *3–4; *Swarth*, 164 F.3d 618. Further, "'in computing the jurisdictional amount, a claim for punitive damages is to be given closer scrutiny.'" *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 225 (2d Cir. 2017) (alterations omitted) (quoting *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1033 n.1 (2d Cir. 1972), *aff'd*, 414 U.S. 291 (1973)).

## II. Amount in Controversy

Plaintiff requests damages in the amount of $521,700,[5] but the vast majority of Plaintiff's request is for punitive damages ($100,000), emotional distress ($250,000), and pain and suffering ($100,000) — collectively amounting to $450,000 of Plaintiff's total damages request. As explained below, these damages are unavailable under New York law, based on the face of the complaint. Accordingly, given that the remainder of

---

[5] Plaintiff asserts that the amount in controversy is $469,700. (Compl., ECF No. 1, at ECF p. 5.) The Court calculates $521,700 based on the damages requested in the prayer for relief. (*See id.* ¶¶ 81–85.) Specifically, Plaintiff requests "in excess of[:]" (1) "$10,000.00 due to auto insurance payments from July 1, 2014 to February 8, 2017 fulfilled"; (2) "$10,000.00 due to car loan payments from July 1, 2014 to March 8th, 2017"; (3) "$10,000.00 due to the increased payments appended to the trade-in of the" subject vehicle, which "Plaintiff opted to replace" in February 2017; (4) "$5,000.00 due to the vehicle not drivable," including the cost of "public transportation, monthly MetroCards, taxis[,] etc."; (5) "$1,000.00 due to New Jersey PATH Train and Long Island Railroad expenses incurred due to loss usage of vehicle"; (6) "$2,000.00 due to periodic rental of vehicles and expenses incurred during travels in New York City and beyond"; (7) "$700.00 due to vehicle summons/citations received for expired inspection sticker and registration"; (8) "$20,000.00 due to Plaintiff [being] unable to initially trade-in the vehicle due to Defendant'[s] actions"; (9) "$10,000.00 for loss of wages/opportunity"; (10) "$250,000.00 for the continual emotional distress, pain, suffering incurred due to loss use of vehicle"; (11) "$3,000.00 for compensatory damages"; (12) "$100,000.00 for punitive damages"; and (13) "$100,000.00 for pain and suffering." (*Id.* ¶¶ 51, 85.) The Court does not take into account Plaintiff's request for costs, nor his request for "attorney fees should counsel be retained during litigation." (*Id.* ¶ 85.) *See* 28 U.S.C. § 1332(a) (excluding "interest and costs" from the amount in controversy); *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) ("The amount in controversy is determined at the time the action is commenced.").

9

Plaintiff's damages request amounts to $71,700, the Court finds that Plaintiff has not established, to a reasonable probability, that the jurisdictional amount in controversy is met.

As an initial matter, Defendant correctly observes that punitive damages are unavailable here. The New York Court of Appeals has long held that "[p]unitive damages are not recoverable for an ordinary breach of contract[,] as their purpose is not to remedy private wrongs but to vindicate public rights." *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 613 (1994); *see also TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 94 (2d Cir. 2005). For punitive damages to be available, "(1) [the] defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of [an] egregious nature . . . ; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally." *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316 (1995) (citation omitted).

Here, Plaintiff alleges that Defendant breached its obligations under the Policy by failing to adequately investigate the repairs conducted by Metropolitan, paying Metropolitan directly (as opposed to issuing a check to Plaintiff), failing to provide Plaintiff certain documents required by the New York Insurance Law, and, as a general matter, denying coverage for the underlying accident and subsequent repairs and costs. (*See* Compl., ECF No. 1, ¶¶ 60–72.) Plaintiff makes similar allegations as to his claim for breach of the covenant of good faith and fair dealing. (*See id.* at ¶¶ 75–77.) These allegations, taken as true, do not describe the kind of systemic, "egregious conduct . . . directed at the public," for which punitive damages are available under New York law. *N.Y. Univ.*, 87 N.Y.2d at 316.

Similarly, the complaint is devoid of allegations supporting a claim for emotional distress damages or pain and suffering. Under New York law, "pain and suffering, and

10

emotional distress are not recoverable . . . in a breach of contract action." *Burnell v. Morning Star Homes, Inc.*, 494 N.Y.S.2d 488, 490 (N.Y. App. Div. 3d Dep't 1985); *see Johnson v. Jamaica Hosp.*, 62 N.Y.2d 523, 528 (1984) ("The general rule in contract cases is that 'absent a duty upon which liability can be based, there is no right of recovery for mental distress resulting from the breach of a contract-related duty.'" (quoting *Wehringer v. Standard Sec. Life Ins. Co.*, 57 N.Y.2d 757, 759 (1982))); *see also Park v. State Farm Mut. Auto. Ins. Co.*, No. 20-CV-1982 (JMA) (SIL), 2021 WL 7159903, at *14 (E.D.N.Y. Oct. 20, 2021), *report and recommendation adopted as modified*, 2022 WL 247934 (E.D.N.Y. Jan. 27, 2022). Emotional distress damages are also unavailable for breach of the covenant of good faith and fair dealing. *Perlbinder v. Vigilant Ins. Co.*, 141 N.Y.S.3d 141, 147 (N.Y. App. Div. 2d Dep't 2021).

"A limited exception" to the rule against recovery of these types of damages applies "where a special relationship exists between the parties and a defendant's acts are wanton or reckless." *Hoheb v. Pathology Assocs. of Albany, P.C.*, 536 N.Y.S.2d 894, 896 (N.Y. App. Div. 3d Dep't 1989); *see Capeci*, 2022 WL 1725327, at *2 (describing "the exceptions for 'wrongful and abusive ejection by a hotel or innkeeper,' 'indignant expulsion or removal from a public facility,' or 'ejection by a common carrier'" (quoting *Johnson*, 62 N.Y.2d at 528)); *see also Perlbinder*, 141 N.Y.S.3d at 147. Here, however, Plaintiff has merely alleged facts showing that the parties had a relationship "based in contract," rendering damages for pain and suffering and emotional distress unavailable. *Park*, 2021 WL 7159903, at *14. In addition, Plaintiff has not alleged facts to support an inference that Defendant's actions were sufficiently "wanton or reckless" to merit the exception. *Hoheb*, 536 N.Y.S.2d at 896.

Because punitive damages, emotional distress, and pain and suffering are legally unavailable based on the face of the complaint, the Court must exclude them in its

11

calculation of the amount in controversy. Plaintiff's alleged damages therefore amount to only $71,700.[6] Seeing no other basis in the complaint from which to conclude that Plaintiff's claims are in excess of $75,000, the Court finds that Plaintiff falls "short of alleging that $75,000 or more is in controversy in this lawsuit, as required for diversity jurisdiction." *Capeci*, 2022 WL 17253527, at *2; *see also Kruglov v. Copart of Conn., Inc.*, 771 F. App'x 117, 118–20 (2d Cir. 2019).

### III. Leave to Amend Should Be Granted

The Second Circuit has instructed that, before dismissing on the basis "that the amount in controversy requirement has not been met, the court must afford the plaintiff an appropriate and reasonable opportunity to show good faith in believing that a recovery in excess of the jurisdictional amount is reasonably possible." *Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Tr. Co.*, 93 F.3d 1064, 1070 (2d Cir. 1996) (quotation marks and modification omitted). Accordingly, rather than dismiss for lack of subject matter jurisdiction, the Court recommends that Plaintiff be permitted leave to file an amended complaint, wherein Plaintiff will have the opportunity to allege facts showing, in good

---

[6] The Court further notes that several of Plaintiff's damages requests are for consequential damages, i.e., "compensat[ion] for additional losses incurred as a result of the breach." *Kruglov v. Copart of Conn., Inc.*, 771 F. App'x 117, 119 (2d Cir. 2019) (quotation marks omitted). For instance, Plaintiff seeks $20,000 in damages allegedly incurred after he was "unable to initially trade-in the vehicle due to Defendant'[s] actions" and $10,000 for "loss of wages/opportunity." (*See* Compl., ECF No. 1, ¶ 85.) Absent any allegation, however, that such damages were "'foreseeable and within the contemplation of the parties at the time the contract was made,'" it appears that such damages are unavailable under New York law. *Kruglov*, 771 F. App'x at 119 (quoting *Latham Land I, LLC v. TGI Friday's, Inc.*, 948 N.Y.S.2d 147, 152 (2012)); *see, e.g., id.* (holding that the insured plaintiff could not rely on consequential damages requests to satisfy the amount in controversy absent allegations that the parties contemplated such damages at the time the insurer issued the policy); *Avent v. Platinum Plus Auto Prot.*, No. 19-CV-1494 (BKS) (DJS), 2021 WL 706643, at *9 (N.D.N.Y. Feb. 23, 2021) (excluding consequential damages when calculating the amount in controversy absent allegations that the parties contemplated such damages at the time of contract). Accordingly, notwithstanding Plaintiff's request for damages "in excess of" the specific dollar amounts set forth in the complaint, the Court finds that Plaintiff has not alleged facts showing that the jurisdictional minimum is satisfied. (Compl., ECF No. 1, ¶ 85.)

12

faith, that the amount in controversy is met in this case. *See, e.g., Garland-Sash v. Stutz*, No. 05-CV-4207 (ENV), 2006 WL 8439322, at *2–3 (E.D.N.Y. May 8, 2006); *Khiger v. Nevada*, No. 13-CV-6057 (WFK) (LB), 2013 WL 12323919, at *2 (E.D.N.Y. Nov. 12, 2013). Plaintiff may also use the opportunity to name HUIC as the proper party defendant in this action.

In light of this recommendation, and due to concerns about subject matter jurisdiction, the Court respectfully recommends declining to reach the merits of Defendant's arguments in support of dismissal at this juncture. Accordingly, the Court recommends denying Defendant's motion to dismiss and motion to strike as moot.

The Court nevertheless notes its concerns regarding the timeliness of Plaintiff's claims, given New York's six-year statute of limitations. *See* N.Y. C.P.L.R. § 213; *see also P.S. Fin., LLC v. Eureka Woodworks, Inc.*, 184 N.Y.S.3d 114, 137 (N.Y. App. Div. 2d Dep't 2023). The Court further notes that neither party has addressed the tolling of all statutes of limitations under Executive Order 202.8, issued March 20, 2020, and the "series of nine Executive Orders extending this toll" until November 3, 2020, for a total of almost eight months. *Cain v. County of Niagara*, No. 20-CV-1710 (WMS), 2022 WL 616795, at *5 (W.D.N.Y. Mar. 2, 2022) (citing N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.8 (2020) and subsequent executive orders). Given that at least some of Plaintiff's allegations detail actions taken by Defendant in late 2015 (and well into 2016), and Defendant's argument that the statute of limitations expired "no later than January 27, 2016" — rendering the complaint six months late — the statute of limitations may only bar a portion of Plaintiff's claim.[7] (Supp. Mem., ECF No. 16-1, at 7; *see* Compl., ECF No. 1, ¶¶ 45–46, 55,

---

[7] Indeed, Defendant acknowledges that Plaintiff has alleged a breach of contract occurring in January 2016, based on Defendant's alleged refusal "to pay for the additional work to fix the vehicle" following Metropolitan's faulty repair job. (Supp. Mem., ECF No. 16-1, at 6;

13

57.) *See Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (explaining that a *pro se* complaint is to be "construed liberally . . . and interpreted to raise the strongest claims that it suggests"). However, because it is unclear that there is subject matter jurisdiction in this case, the Court respectfully recommends declining to make a conclusive determination as to the timeliness of Plaintiff's claims at this juncture. So too with Defendant's argument that Plaintiff's claims are duplicative. Plaintiff should consider timeliness and whether his claims are duplicative in the event that he has a good faith, factual basis to support an amended complaint. *See generally Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (observing that, when a plaintiff is *pro se*, courts "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated" (quotation marks omitted)).

## CONCLUSION

For the reasons discussed above, the Court recommends granting Plaintiff leave to amend the complaint, to reflect the proper party defendant and to make good faith allegations showing that the $75,000 amount in controversy is met here, and that his claims are within the six-year statute of limitations. Plaintiff should be advised, however, that failure to allege a good faith basis for the threshold amount in controversy may result in dismissal for lack of subject matter jurisdiction. In light of the

---

Reply, ECF No. 19, at 4.) Although Defendant contends that it was not required to pay for "damages related to Metropolitan's alleged poor workmanship," that argument goes to Defendant's obligations under the contract and whether a breach in fact occurred. (Supp. Mem., ECF No. 16-1, at 7.) Defendant has not directed the Court to any provision of the 90-page Policy supporting this argument, nor has it shown that the Policy is unambiguous as to whether Defendant was required to pay for damages caused by Metropolitan, such that the Court can decide this issue as a matter of law. *See Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006). In the absence of an unequivocal contractual bar to Plaintiff's claim, the Court is not inclined to exclude the alleged breach in January 2016 for purposes of determining whether Plaintiff's claim is time-barred.

Court's recommendation that Plaintiff be granted leave to amend, the Court recommends that Defendant's motion to dismiss and motion to strike be denied as moot.

\* \* \* \* \*

This Report and Recommendation will be filed electronically and sent by mail to Plaintiff Mark Garnes. Objections to this Report and Recommendation must be filed, with a courtesy copy sent to the Honorable Rachel P. Kovner, at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision" (quotation marks omitted)).

**SO ORDERED.**

Dated:   Brooklyn, New York
        August 9, 2023

*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE