UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
MARK GARNES,

                Plaintiff,

    -against-

THE HARTFORD INSURANCE
COMPANY,

                Defendant.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
22-CV-3406 (RPK) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

    Plaintiff Mark Garnes initiated this action against "The Hartford Insurance Company" on June 6, 2022, alleging claims, *inter alia*, for breach of contract and breach of the covenant of good faith and fair dealing. (*See* Compl., ECF No. 1.) Following denial of Defendant's initial motion to dismiss, Plaintiff filed an amended complaint on September 14, 2023, naming "The Hartford Underwriters Insurance Company" ("Defendant") as the proper party defendant. (*See* Am. Compl., ECF No. 23.) In response, Defendant filed a partial motion to dismiss, which the Honorable Rachel P. Kovner referred to the undersigned magistrate judge for a report and recommendation. For the following reasons, the Court respectfully recommends dismissing Plaintiff's amended complaint for lack of subject matter jurisdiction and denying Defendant's motion to dismiss as moot.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Factual Background

    This case stems from a motor vehicle insurance policy Defendant issued to Plaintiff on November 5, 2013. (*See* Am. Compl., ECF No. 23, ¶ 6; *see also* Policy, ECF No. 16-3.) On July 1, 2014, during the policy period, Plaintiff was involved in a motor

1

vehicle accident in Brooklyn, New York. (*See* Am. Compl., ECF No. 23, ¶ 7.) Law enforcement responded to the scene of the accident and eventually contacted Metropolitan Auto Body and Towing ("Metropolitan"), to remove Plaintiff's vehicle from the scene. (*Id.* ¶ 8.) Plaintiff preferred to have his vehicle, a Volkswagen Passat, taken to a Volkswagen service center, but a truck driver from Metropolitan arrived and, against Plaintiff's wishes, towed the vehicle to "Metropolitan's tow yard for accident vehicles." (*Id.* ¶ 8; *see id.* ¶ 6.)

Plaintiff notified Defendant of the accident later that morning, and a representative for Defendant issued Plaintiff a claim number. (*Id.* ¶ 9.) As Plaintiff alleges, he "continuously sought the assistance of Defendant . . . to have [his] vehicle moved" from Metropolitan to the Volkswagen service center. (*Id.* ¶ 13.) "Defendant constantly assert[ed]," however, that it could not "do anything about it." (*Id.*) "However, it was Plaintiff's understanding that Defendant would notify Plaintiff" when Defendant had dispatched a representative to the tow yard, "thus, allowing Plaintiff to have that representative . . . assist Plaintiff" in having his vehicle taken to the service center. (*Id.* ¶ 15.)

Defendant sent an appraiser to Metropolitan's tow yard on July 22, 2014, but did not notify Plaintiff until the appraisal was completed. (*Id.* ¶ 16.) A couple of days later, Defendant issued a check to Metropolitan in the amount of $10,969.70 to make repairs. (*Id.* ¶ 21.) Despite some indication in the appraiser's report of possible internal damage, Defendant paid Metropolitan "the costs [of repairing] exterior structural damage only." (*Id.* ¶¶ 18, 21.) Plaintiff further alleges that Defendant issued the check to Metropolitan despite having previously advised Plaintiff that it would pay him directly. (*Id.* ¶ 22.)

Metropolitan completed its repairs on August 29, 2014. (*Id.* ¶ 24.) Upon receipt of his vehicle, Plaintiff drove it to the Volkswagen service center for an inspection. (*Id.*

2

¶ 26.) Days later, a representative from the service center contacted Plaintiff and informed him that Metropolitan had made "faulty repairs" to the vehicle, that Plaintiff "would need to pay the cost to disassemble the vehicle to determine further inner damage," and that it was unclear whether the vehicle was drivable. (*Id.* ¶ 28; *see id.* ¶ 30.) Plaintiff notified Defendant and later provided documentation of the faulty repairs. (*Id.* ¶ 29.)

Over the following months, Plaintiff noticed several issues with his vehicle while continuing to drive it. The horn did not work, the wheels were not aligned, and, one day, he had issues driving the vehicle in reverse. (*Id.* ¶¶ 31–32, 34.) Plaintiff returned the vehicle to the service center for repairs, and, on December 2, 2014, Plaintiff was advised not to drive it anymore. (*Id.* ¶ 34.) Plaintiff contacted Defendant regarding the issues, but Defendant "refused to cover the costs." (*Id.*)

During this time, Plaintiff filed a complaint against Metropolitan with the State of New York. (*Id.* ¶ 36.) Pursuant to his complaint, Plaintiff had the vehicle towed to the New York City Department of Motor Vehicles ("DMV") on April 15, 2015, for an inspection by a DMV investigator. (*Id.* ¶ 37.) The investigator concluded that Metropolitan had willfully made faulty repairs to Plaintiff's vehicle, in violation of New York law. (*Id.* ¶ 38.)

Following the DMV investigation, Defendant issued Plaintiff a new claim number on April 27, 2015. (*Id.* ¶ 39.) Plaintiff's vehicle was returned to the Volkswagen service center, where it was determined that the vehicle would need to be disassembled to evaluate internal damage. (*Id.* ¶¶ 38–39.) Defendant declined, at that time, to pay the costs of disassembly, but retained a second appraiser who, on June 3, 2015, conducted a supplemental estimate of needed repairs. (*Id.* ¶¶ 40–41.) The appraiser informed Plaintiff, however, that he was unable "to conduct a thorough estimate of the internal[]

3

damages" without having the vehicle disassembled, the cost of which Defendant again declined to cover. (*Id.*)

Plaintiff spoke with one of Defendant's representatives regarding the issue "and emailed her on this matter practically weekly for over two months." (*Id.* ¶ 41.) Eventually, on August 26, 2015, upon learning that he would soon incur a $50 per day storage fee, Plaintiff notified the service center that he would cover the costs of disassembly himself. (*Id.* ¶ 43.) On September 20, 2015, Plaintiff received a check from Defendant in the amount of $546.20 for "supplemental damages." (*Id.* ¶ 44.) Plaintiff alleges that Defendant thereafter unlawfully "cancelled Plaintiff's vehicle insurance" without notice on November 15, 2015. (*Id.* ¶ 46.) Plaintiff "attempted to have Defendant . . . reinstate [his] auto insurance coverage," but alleges that Defendant declined. (*Id.* ¶ 53.)

On or about February 29, 2016, Plaintiff removed his vehicle from the Volkswagen service center (having been charged $1,088.00). (*Id.* ¶ 48.) Plaintiff returned his vehicle to Metropolitan for additional repairs in May 2016, which then returned it to Plaintiff in August 2016. (*Id.* ¶¶ 50–51.) The vehicle failed inspection on September 7, 2016, and Plaintiff traded in the vehicle on or about February 7, 2017. (*Id.* ¶ 52.)

## II. Procedural History[1]

Plaintiff filed this action on June 6, 2022, alleging claims against Defendant for breach of contract and breach of the implied covenant of good faith and fair dealing, along with various other violations of the New York Insurance Law and related regulations, seeking over $500,000 in damages. (*See* Compl., ECF No. 1, ¶¶ 60–79, 85.)

---

[1] This opinion assumes general familiarity with the procedural history of this case as set forth in the Court's prior report and recommendation. (*See* R. & R., ECF No. 22.)

4

On August 9, 2023, the Court filed a report and recommendation recommending, *inter alia*, denying Defendant's first motion to dismiss as moot and giving Plaintiff leave to amend "to grant him the opportunity to set forth good faith allegations showing whether the amount in controversy is met here." (*See* R. & R., ECF No. 22, at 1, 8.) In regard to concerns about the amount in controversy, the Court first observed that punitive damages and damages for emotional distress or pain and suffering are not available based on the allegations in Plaintiff's complaint. (*Id.* at 9–12.) The Court also observed that "several of Plaintiff's damages requests are for consequential damages," but that, "[a]bsent any allegation . . . that such damages were foreseeable and within the contemplation of the parties at the time the contract was made, it appears that such damages are unavailable under New York law." (*Id.* at 12 n.6 (quotation marks omitted).) Lastly, the Court noted that, for purposes of evaluating whether the jurisdictional threshold amount in controversy has been alleged, it would not "take into account Plaintiff's requests for costs, nor his request for attorney fees." (*Id.* at 9 n.5 (quotation marks omitted).) Finding that the remainder of Plaintiff's damages allegations amounted to $71,700, the Court concluded that Plaintiff had not established, to a reasonable probability, that the jurisdictional amount in controversy had been shown. (*Id.* at 9–10.) The Court also advised Plaintiff that "failure to allege a good faith basis for the threshold amount in controversy may result in dismissal for lack of subject matter jurisdiction." (*Id.* at 14.) On September 5, 2023, Judge Kovner adopted the Court's report and recommendation and granted Plaintiff leave to amend the complaint. (Sept. 5, 2023 ECF Order Adopting R. & R.)

On September 14, 2023, Plaintiff filed an amended complaint. (Am. Compl., ECF No. 23.) As noted above, on October 5, 2023, Defendant filed a partial motion to dismiss. (Mem. in Supp., ECF No. 24-1.) On October 20, 2023, Plaintiff filed a response. (Mem. in

Opp'n, ECF No. 27.) Six days later, Defendant filed a reply. (Reply in Supp., ECF No. 28.) On March 28, 2024, Judge Kovner referred the motion to the undersigned magistrate judge for a report and recommendation. (Mar. 28, 2024 Order.)

## DISCUSSION

Defendant raises two arguments in support of its partial motion to dismiss: first, that "[a]ny claimed breach by Hartford prior to October 21, 2015 is time barred," and second, that "Plaintiff cannot state a claim for a breach of the covenant of good faith and fair dealing" because it would be duplicative of Plaintiff's claim for breach of contract. (Mem. in Supp., ECF No. 24-1, at 6, 9.) However, because Plaintiff has not adequately alleged facts to demonstrate that his claims meet the $75,000 amount in controversy threshold, the Court does not have subject matter jurisdiction and therefore cannot reach the issues raised in Defendant's motion to dismiss. 28 U.S.C. § 1332(a); *see Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (explaining that, when a court lacks jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing the case" (quotation marks omitted)). For the reasons set forth below, the Court recommends dismissing Plaintiff's amended complaint for lack of subject matter jurisdiction and denying Defendant's motion to dismiss as moot.

### I. Legal Standards

"[F]ederal courts are courts of limited jurisdiction" and are generally authorized only to hear cases arising under federal question or diversity jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978); *see* 28 U.S.C. §§ 1331, 1332. "A plaintiff properly invokes [diversity] jurisdiction when he presents a claim between parties of

diverse citizenship that exceeds the required jurisdictional amount, currently $75,000." *Smith v. Parsons*, No. 09-CV-2921 (BMC), 2009 WL 3052631, at *1 (E.D.N.Y. Sept. 22, 2009). "A party invoking [diversity jurisdiction] has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Scherer v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quotation marks omitted). There is a "rebuttable presumption," however, "that the face of the complaint is a good faith representation of the actual amount in controversy." *Id.* (quotation marks omitted).

That said, "if a court makes a face-of-the-complaint determination that the $75,000 amount in controversy cannot be recovered to a legal certainty, the case is dismissed for lack of subject matter jurisdiction." *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 507 n.5 (2d Cir. 2005) (quotation marks omitted); *see Capeci v. Seven Corners Inc.*, No. 22-CV-6644 (RPK) (PK), 2022 WL 17253527, at *1 (E.D.N.Y. Nov. 28, 2022) ("If it is apparent to a legal certainty that a party invoking diversity jurisdiction cannot recover more than $75,000, the lawsuit should be dismissed."). If the alleged amount in controversy is premised on damages that are unavailable as a matter of law, then those damages "may not be used to meet the diversity jurisdiction threshold." *Bracken v. M.H. Pillars Inc.*, 290 F. Supp. 3d 258, 268 (S.D.N.Y. 2017); *Int'l Christian Broad., Inc. v. Koper*, No. 12-CV-3570 (LDW) (GRB), 2012 WL 5210595, at *3–4 (E.D.N.Y. Oct. 19, 2012), *report and recommendation adopted*, 928 F. Supp. 2d 559 (E.D.N.Y. 2013); *Z-Axis Tech Sols., Inc. v. Richmond Cap. Grp., LLC*, No. 17-CV-3983 (GBD), 2018 WL 1088008, at *3–4 (S.D.N.Y. Feb. 14, 2018); *Law Offs. of Louis Venezia v. Swarth*, 164 F.3d 618 (2d Cir. 1998).

## II. Analysis

Plaintiff now claims damages in the amount of $91,400.13.[2] (*See* Am. Compl., ECF No. 23, ¶¶ 80–84.) Of this total, however, Plaintiff requests over $30,000 in consequential damages, i.e., "compensat[ion] for additional losses incurred as a result of the breach." *Kruglov v. Copart of Conn., Inc.*, 771 F. App'x 117, 119 (2d Cir. 2019) (quotation marks omitted). (*See* Am. Compl., ECF No. 23, ¶¶ 80–84.) Specifically, Plaintiff alleges, among other things, $20,000 in damages allegedly incurred after he was "unable to initially trade-in the vehicle due to Defendant'[s] actions," $10,000 for "loss wages/opportunity," and $8,000 related to costs incurred because the vehicle was not drivable, including costs for public transportation, taxis, and car rentals. (*Id.* ¶ 84.) Absent any allegation, however, that consequential damages such as these were

---

[2] The Court calculates $91,400.13 based on the damages requested in the prayer for relief. (*See* Am. Compl., ECF No. 23, ¶¶ 80–84.) Specifically, Plaintiff requests "in excess of" (1) $21,601.25 due to car loan payments from July 1, 2014, to February 7, 2017; (2) $15,376.62 due to "additional payments appended to the trade-in of the" subject vehicle; (3) $2,722.26 due to sales tax for the subject vehicle and the replacement vehicle; (4) "$10,000 due to auto insurance payments from July 1, 2014 to November 5, 2015"; (5) "$5,000 due to the vehicle not drivable," including the cost of "public transportation, monthly MetroCards, taxis[,] etc."; (6) "$1,000 due to New Jersey PATH Train and Long Island Railroad expenses incurred due to loss usage of vehicle"; (7) "$2,000 due to periodic rental of vehicles and expenses incurred during travels in New York City and beyond"; (8) "$700 due to vehicle summons/citations received for expired inspection sticker and registration"; (9) "$20,000 due to Plaintiff [being] unable to initially trade-in the vehicle due to Defendant'[s] actions"; (10) "$10,000 for loss wages/opportunity"; and (11) "$3,000 for compensatory damages." (*Id.* ¶ 84.)

The Court does not take into account Plaintiff's requests for costs in evaluating the amount in controversy. (*Id.* ¶ 84.) *See* 28 U.S.C. § 1332(a) (excluding "interests and costs" from the amount in controversy); *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) ("The amount in controversy is determined at the time the action is commenced."). The Court also does not consider Plaintiff's request for damages for "loss of use of Plaintiff's vehicle" because this request is duplicative of the request for "$5,000 due to . . . denied use of vehicle." (Am. Compl., ECF No. 23, ¶ 84.) *See, e.g., Wright v. Carleton Coll.*, No. 00-CV-3335 (AKH), 2000 WL 1474408, at *2 (S.D.N.Y. Oct. 4, 2000) (declining to consider requests for duplicative damages in determining whether the amount in controversy requirement was satisfied). Lastly, the Court declines to consider Plaintiff's request for damages "for the augmented coverage of Plaintiff's 2014 Volkswagen . . . due to Defendant'[s] denial to renew Plaintiff's policy," as Plaintiff does not allege sufficient information for the Court to ascribe a monetary value to this request. (Am. Compl., ECF No. 23, ¶ 84.)

8

"'foreseeable and within the contemplation of the parties at the time the contract was made,'" such damages are unavailable under New York law. *Kruglov*, 771 F. App'x at 119 (quoting *Latham Land I, LLC v. TGI Friday's, Inc.*, 948 N.Y.S.2d 147, 152 (2012)); *see, e.g., id.* (holding that the insured plaintiff could not rely on consequential damages requests to satisfy the amount in controversy absent allegations that the parties contemplated such damages at the time the insurer issued the policy); *Bi-Econ. Mkt, Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 192–93 (2008) (explaining that the breaching party is only liable for consequential damages resulting from foreseeable risks, i.e., risks that are the natural and probable consequence of the contract breach); *Avent v. Platinum Plus Auto Prot.*, No. 19-CV-1494 (BKS) (DJS), 2021 WL 706643, at *9 (N.D.N.Y. Feb. 23, 2021) (excluding consequential damages when calculating the amount in controversy absent allegations that the parties contemplated such damages at the time of contract).

In *Kruglov*, the court held that lost wages due to the loss of a vehicle were not available because such consequential damages were not foreseeable. 771 F. App'x at 119. There, the plaintiff had purchased a vehicle from the defendant, "a company that sells used and/or salvaged vehicles." *Kruglov v. Copart of Conn., Inc.*, No. 17-CV-1306 (DNH) (DJS), 2018 WL 1399332, at *2 (N.D.N.Y. Jan. 16, 2018), *report and recommendation adopted sub nom. Kruglov v. Copart of Conn., Inc., CT*, 2018 WL 1399337 (N.D.N.Y. Mar. 19, 2018), *aff'd sub nom. Kruglov*, 771 F. App'x 117. After discovering that the vehicle was defective, plaintiff sought to cancel the contract, but defendant refused. *Id.* at *2. Defendant eventually agreed to purchase the car back from plaintiff, but never paid plaintiff. *Id*. Plaintiff ultimately brought an action against defendant for, *inter alia*, breach of contract, and alleged, amongst other damages, "$129,000 from a job interview opportunity that he lost because he had no car to drive to the interview." *Kruglov*, 771 F. App'x at 119. The court held that plaintiff could not "recover damages associated with

9

the salary for the job for which he could not interview because such indirect or consequential damages were not foreseeable." *Id.* Specifically, the court noted that plaintiff "does not allege that he informed [the defendant] that he intended to purchase a car for employment purposes, nor do his allegations otherwise support the inference that the parties contemplated that [defendant] would be liable for any damages flowing from [plaintiff's] inability to attend a job interview." *Id.*

The rationale of *Kruglov* applies with substantial force here. Like the plaintiff in *Kruglov*, Plaintiff has not alleged that there is a provision in Defendant's insurance policy "underlying the instant claims which purports to cover consequential damages such as business interruption, loss of revenue or diminution of business value." *Int'l Rehab. Scis., Inc. v. Gov't Emps. Ins. Co.*, No. 12-CV-1225 (RJA), 2014 WL 6387276, at *3 (W.D.N.Y. Nov. 14, 2014). Therefore, notwithstanding Plaintiff's conclusory allegation of damages "in excess of" the specific dollar amounts set forth in the amended complaint, the Court finds that Plaintiff has not plausibly alleged sufficient facts to establish that consequential damages should be included in calculating the amount in controversy. Without the $30,000 to $38,000 in consequential damages, Plaintiff's damages allegations total $53,400.13 to $61,400.13 — amounts insufficient to establish the required jurisdictional amount of $75,000. (*See* Am. Compl., ECF No. 23, ¶ 84.)

Plaintiff also attempts to assert "diversity jurisdiction [] based on Defendant's policy." (*Id.* (capitalization modified).) Specifically, Plaintiff cites Defendant's "automobile insurance policy" for "coverages and limits of liability being $50,000.00," "personal injury protection . . . being $50,000.00," and "transportation expenses being $600.00." (*Id.* (capitalization modified) (quotation marks omitted).) Plaintiff's reliance on the policy limits to satisfy the amount in controversy requirement is misplaced. "A court may only consider the entire value of an insurance policy . . . in its determination

10

of the amount in controversy if the validity of the policy or contract itself is at issue." *Conzo v. SMA Life Assurance Co.*, No. 01-CV-11243 (DLC), 2003 WL 21018823, at *2 (S.D.N.Y. May 6, 2003); *see, e.g., Beacon Constr. Co. Inc. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1975) (concluding that, "[i]n a declaratory judgment action involving the validity of a contract," "the entire value of an insurance policy determines the jurisdictional amount"). Here, Plaintiff "has not alleged that the insurance policy itself is invalid"; rather, as discussed above, all of Plaintiff's claims for damages are grounded on the notion that Plaintiff was insured. *Conzo*, 2003 WL 21018823, at *2. Accordingly, the insurance policy limits are not the appropriate metric to ascertain whether Plaintiff has met the amount in controversy requirement. In light of Plaintiff's failure to state facts sufficient to plausibly allege that consequential damages were contemplated by the policy or that the policy limits are applicable in ascertaining damages, the Court finds that Plaintiff has not alleged facts illustrating that the federal jurisdictional minimum for diversity cases is satisfied.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends dismissing Plaintiff's amended complaint for lack of subject matter jurisdiction and denying Defendant's motion to dismiss as moot. *See Meyer, Suozzi, English & Klein, P.C. v. Higbee*, No. 18-CV-3353 (ADS) (ARL), 2020 WL 1140424, at *4 (E.D.N.Y. Mar. 9, 2020) (dismissing amended complaint without leave to amend after previously granting the plaintiff leave to add facts "supporting the exercise of the Court's subject matter jurisdiction").

\* \* \* \* \*

This report and recommendation will be filed electronically and sent by mail to Plaintiff Mark Garnes. Objections to this report and recommendation must be filed,

with a courtesy copy sent to the Honorable Rachel P. Kovner, at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate[ judge's] decision" (quotation marks omitted)).

    **SO ORDERED.**

Dated: Brooklyn, New York
       July 23, 2024

*Taryn A. Merkl*

TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE